# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| alfaCTP SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 15-cv-9338 |
| DENNIS NIERMAN, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Dennis Nierman's motion for an order disqualifying attorney Carmen V. Speranza ("Speranza"), and the law firm of Speranza & Bates (the "Firm"), as legal counsel for Plaintiff alfaCTP Systems, Inc. (R.20) (the "Disqualification Motion"). The Court also considers Plaintiff's motion to strike Defendant's Counter-Affidavit and portions of Defendant's reply brief in further support of the Disqualification Motion. (R.28) (the "Motion to Strike"). For the reasons set forth below, the Court denies the Disqualification Motion and denies as moot the Motion to Strike.

## BACKGROUND

On October 6, 2015, Speranza—on behalf of Plaintiff—filed a state court action against Defendant Dennis Nierman alleging fraud, breach of contract, and breach of fiduciary duty arising from Nierman's purported misuse of company funds and fraudulent expense reports. (R.1-1, Verified Compl.). Defendant removed the action to this Court on October 22, 2015. (R.1, Notice of Removal). On November 22, 2015, Defendant filed the Disqualification Motion, seeking to disqualify Speranza and the Firm from representing Plaintiff alfaCTP Systems, Inc.

("alfaCTP") under Local Rules 83.51.7, 85.53.7, and 83.51. (R.20, Opening Br. at 3-11). As an initial matter, the Court notes that the cited local rules are no longer applicable in this district. The applicable disciplinary rules are now the Model Rules of Professional Conduct of the American Bar Association ("ABA Model Rules"). *See* L.R. 83.50. The Court therefore analyzes the Disqualification Motion using the applicable ABA Model Rules, including Model Rule 1.7 (addressing conflicts of interest in concurrent representation); Model Rule 3.7 (the "Witness-Advocate Rule"); and Model Rule 1.10 (addressing the imputation of a disqualified attorney's conflict of interest to his firm). The following facts are helpful to guide the Court's determination on the two pending motions.

I.     **Personal Representation: Estate Planning and Real Estate**

Defendant Nierman first argues that he is current client of Speranza and the Firm. (R.20, Opening Br. at 1-2, 5-7; R.20-1, Nierman Aff.). In particular, Nierman avers that the Firm has represented him in estate planning and residential real estate transactions since the late 1980's, and that he still considers himself a current client "as it relates to [his] estate planning." (R.20-1, Nierman Aff., ¶¶ 2-5). Speranza does not contest that he and/or members of the Firm "episodically" provided legal services with respect to Nierman's estate planning and real estate transactions from 1991 through 2010. (R.25-1, Speranza Decl., ¶¶ 5-9). Speranza states that Nierman has not used the Firm's services for personal matters since October 2010. (*Id.* ¶¶ 10-11, 15). He further states that, in February 2011, the Firm sent out a mass mailing to generate business from "previous estate planning clients," including Nierman, but Nierman did not respond. (*Id.* ¶ 12). According to Speranza and the Firm, Nierman is a former client.

Nierman does not dispute that he has not used the Firm for personal legal services since 2010. Rather, he argues that the Firm never gave him notice of withdrawal of representation and

that he still considers the Firm to be "his law firm." (R.20-1, Nierman Aff., ¶¶ 5, 17; R.26, Reply Br. at 2, 6).

## II.     Corporate Representation: Monotype, alfaQuest, and alfaCTP

Nierman further alleges that, beginning in 1991, he—as President of Monotype Incorporated ("Monotype") and on its behalf—engaged Speranza and the Firm to serve as corporate counsel. (R.20-1, Nierman Aff., ¶¶ 6, 9). In 2002, after Monotype changed its name to alfaQuest Technologies, Inc. ("alfaQuest"), Nierman—as AlfaQuest's officer and director—continued to use Speranza and Firm for "general corporate matters," including the preparation of corporate minutes and the review of corporate contracts. (*Id.* ¶¶ 7, 10-12). In March 2013, alfaQuest merged with Plaintiff (alphaCTP), at which point Nierman "resigned" from his position at alfaQuest and "became an employee of [alfaCTP]." (*Id.* ¶ 8).[1] In May 2013, alfaCTP terminated Nierman. (*Id.* ¶ 14; R.20-2, May 9, 2013 Ltr. from John McAuliffe, attached as Exhibit C to the Compl.). Upon his termination, Nierman called Speranza, who informed Nierman that he could not represent Nierman in the matter due to a conflict of interest, referring Nierman to another law firm. (R.20-1, Nierman Aff., ¶ 16).[2] The record supports this sequence of events. (*See, e.g.*, R.25-1, Speranza Decl., ¶¶ 19-21; R.25-1, May 9, 2013 e-mail from Speranza to McAuliffe, attached as Exhibit 5 to the Speranza Decl. ("Dennis called me earlier this morning . . . He briefly described the cause of his termination at which time I advised him

---

[1] Speranza and the Firm have represented alfaCTP as corporate counsel since its 2006 incorporation. (R.25-3, Ford Aff., ¶ 4). Speranza and Massachusetts attorney John McAuliffe ("McAuliffe") advised on the 2013 merger, with the Firm continuing "to serve as the corporate attorney for the merged firms." (*Id.* ¶¶ 5-8).

[2] Nierman further claims that Speranza stated that he could not represent alfaCTP in the matter, either, due to a conflict of interest. (R.20-1, Nierman Aff., ¶ 16). Speranza disputes making this statement. (R.25-1, Speranza Decl., ¶¶ 19, 25). There is no record support for this statement other than Nierman's affidavit and counter-affidavit.

3

that since I was the attorney for the Company, I could not advise or represent him with regard to the matter")).

Following his discharge from alfaCTP in May 2013, Nierman retained Lavelle Law, Ltd. to represent him. (R.26-2, Ziebell Aff., ¶ 2). Through the Lavelle law firm, Nierman filed an age discrimination claim with the EEOC in August 2013. (*Id.* ¶ 5). The Firm defended alfaCTP against the EEOC charge through its dismissal in November 2013. (R.25-4, O'Connell Decl., ¶¶ 1-5). Nierman and his attorney, Lance Ziebell ("Ziebell"), deny that they were aware that the Firm represented alfaCTP in the EEOC matter. (R.26-1, Nierman Counter-Aff., ¶ 13; R.26-2, Ziebell Aff., ¶¶ 4-5).[3]

Nierman further alleges—in reply briefing only—that "as late as January of 2014, Speranza was meeting with Nierman regarding his dispute with Plaintiff." (R.26, Reply Br. at 6). According to Nierman, Speranza advised him on his post-termination dealings with alfaCTP CEO Anthony Ford and alfaCTP accountant, Dick Ores, and additionally met with Nierman in June or July 2013 and in January 2014 to discuss, among other matters, "the status of the conflict between Nierman and [alfaCTP]." (*Id.* at 3-4; R.26-1, Nierman Counter-Aff., ¶¶ 8-12, 14-15). In the Motion to Strike, Speranza denies these reply-brief allegations as factually untrue and legally impermissible. (*See generally* R.28, Motion to Strike; R.28-2, Speranza First Supplemental Decl. ¶¶ 1-7, 11).

Beginning at least in February 2014, Firm attorney Robert O'Connell contacted Ziebell "regarding the return of certain items for which [alfaCTP] makes claims in its Verified Complaint." (R.20, Opening Br. at 9-10; R.20-3, 2014 Correspondence between O'Connell and

---

[3] Nierman and his attorney do not, however, aver that they were not aware of the Firm's representation of alfaCTP "*after* Mr. Nierman's case was dismissed, either in late 2013 or 2014." (R.28-3, O'Connell First Supplemental Decl., ¶ 4).

Ziebell, attached as Exhibit C to the Opening Br.). Nierman characterizes this correspondence as "two attorneys trying to resolve an outstanding tax and vehicle where the spectre of litigation did not even linger." (R.26, Reply Br. at 5). Nierman's other briefing, however, belies this "non-adverse" characterization. (*E.g.*, R.20, Opening Br. at 9 ("Speranza and the Firm continued to marshal evidence on [alfaCTP's] behalf leading to demand letters in early 2014 and the filing of this lawsuit in October of 2015")). The correspondence, itself, also belies this "non-adverse" characterization. (R.20-3, 2014 Correspondence at 10 (O'Connell to Ziebell: "Right now my client [alpaCTP] will only entertain a settlement and release Mr. Nierman as broadly as your release proposes if he returns the Range Rover and reimburses the company $700,000. The amount in controversy is likely to increase as evidence gets pinned down"); *see also* R.25-4, O'Connell Decl., ¶¶ 6-10 (discussing the same)).

According to Nierman, "there was no contact between the parties" from May 2014 (when Nierman returned the subject Range Rover) through October 2015, when alfaCTP filed this action. (R.26, Reply Br. at 5).

### III. Nierman's Allegations

Nierman now alleges that, because he is current client of Speranza and his interests are directly adverse to alfaCTP, a non-waivable conflict of interest exists, warranting disqualification under Model Rule 1.7. He further seeks disqualification of the Firm under the conflict-imputation principle embodied in Model Rule 1.10. (R.20, Opening Br. at 4-7, 9-11; R.26, Reply Br. at 1-7, 9).

Nierman also argues that Speranza will be a necessary witness regarding a contested issue, warranting disqualification under Model Rule 3.7. In his opening brief, Nierman argues that he needs Speranza's testimony to support his affirmative defense of ratification, insofar as

5

Speranza drafted the corporate minutes for Monotype, alfaQuest, and alfaCTP. (R.20 at 7-8). In reply briefing, Nierman states that he also anticipates Speranza's testimony to cover: (i) "the nature of the communications between Speranza and Nierman regarding [alfaCTP's] business operations"; (ii) Speranza's communications with a Mr. Tullio Ponzi;[4] and (iii) Speranza's advice to Nierman concerning his retention of the 2011 Range Rover.[5] (R.26 at 7).

## LEGAL STANDARD

"A motion to disqualify counsel requires a two-step analysis. First, the court considers whether an ethical violation has occurred. Second, if the court finds such a violation, the court then determines whether disqualification is the appropriate remedy." *Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, No. 06 C 5812, 2009 WL 1439717, at *2 (N.D. Ill. May 18, 2009). Thus, disqualification is not automatic, even if counsel commits an ethical violation. *See e,g.*, *Gina Jang v. Woo Lae Oak, Inc. Chicago*, No. 12-CV-00782, 2013 WL 3270649, at *5 (N.D. Ill. June 27, 2013).

In ruling on a motion to disqualify, courts balance "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Because disqualification causes a disruptive, immediate, and measurable effect on one party in pending litigation, *see Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 719 (7th Cir. 1982), courts view such motions "with extreme caution[.]" *Id.* at 722. Accordingly, the Seventh Circuit has "continuously maintained that disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary."

---

[4] The record indicates that Mr. Ponzi was a shareholder's representative for alfaQuest and alfaCTP. (R.25-4, EEOC Charge, attached as Exhibit 1 to the O'Connell Decl.).

[5] Speranza denies giving this advice. (R.28-2, Speranza First Supplemental Decl., ¶ 3).

*Schiessle*, 717 F.2d at 420 (citation and quotation omitted); *see also Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (same). The moving party, thus, "bears a heavy burden of proving facts required for disqualification." *Commonwealth Ins. Co. v. Stone Container Corp.*, 178 F. Supp. 2d 938, 943 (N.D. Ill. 2001).

## ANALYSIS

### I. Conflict of Interest (Rule 1.7)

Under Model Rule 1.7, a "lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Courts generally determine client status (current versus former) at the time of complaint filing. *See Alexander Proudfoot PLC v. Fed. Ins. Co.*, No. 93 C 6287, 1994 WL 110531, at *2 (N.D. Ill. Mar. 30, 1994). In deciding whether an attorney-client relationship existed between Speranza and Nierman as of October 2015, the Court refers to the Model Rules. Model Rule 1.16 clarifies that, "[o]rdinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded." Model Rule 1.16, cmt. [1]. Model Rule 1.3 continues:

> If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.

Model Rule 1.3, cmt. [4].

Speranza and alfaCTP argue that there is no "concurrent" representation because Nierman is not a current client, pointing to evidence that: (1) Nierman has not used the Firm's services for estate planning or real estate matters since October 2010; and (2) Nierman has known that the Firm represented alfaCTP, in a manner directly adverse to Nierman, since at least early 2014. Here, the record indicates that Nierman used the Firm's legal services for discrete

7

and limited tasks, which weighs in favor of a finding that the Firm's representation terminated in 2010, when Speranza closed the last real estate deal on behalf of Nierman. This periodic representation, however, spanned at least 1991-2010, and the Firm never gave Nierman written notice of withdrawal, both of which indicate a continuing relationship. Ultimately, the Court looks to whether conduct inconsistent with the continuation of the attorney-client relationship terminated the Firm's representation of Nierman. *See SWS Fin. Fund A v. Salomon Bros. Inc.*, 790 F. Supp. 1392, 1398 (N.D. Ill. 1992).[6]

Here, in May 2013, Speranza unequivocally told Nierman that he could not represent or advise him, referring him to Lavelle Law for personal representation. In addition, the Firm issued demand letters and negotiated with Nierman and Lavelle Law since at least early 2014, ultimately leading to the filing of this action in October 2015. Nierman lacks both record evidence and legal authority supporting his claim that, despite this adversarial posture, he was entitled to assume that Speranza was his personal attorney through October 2015.[7] The Court

---

[6] To conduct this analysis, the Court distinguishes between the Firm's representation of Nierman in his *personal* capacity versus in his *corporate* capacity as an officer, director, and/or employee of Monotype, alfaQuest, and alfaCTP. As Nierman acknowledges, an attorney represents a corporation "through that corporation's duly authorized constituents." (R.20, Opening Br. at 6). The client, however, is the corporation – *not* the authorized constituent. *See* Model Rule 1.13 and cmt. [2] ("This does not mean, however, that constituents of an organizational client are the clients of the lawyer"). Nierman now claims that "no one at the Firm ever thought to advise Nierman that the information he provided to Speranza or the Firm [during the course of his employment] was potentially not protected by the attorney-client privilege." (R.26, Reply Br. at 3). Model Rule 1.13 confirms, however, that when "one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6." Model Rule 1.13, cmt. [2]. Once Speranza realized that alfaCTP's interests were adverse to Nierman's in May 2013, he explained to Nierman that his client was alfaCTP – *not* Nierman. *See* Model Rule 1.13(f). Thus, the Court does not consider Nierman's "corporate capacity" allegations in determining whether Nierman is a current client of the Firm.

[7] Nierman does not dispute that neither he nor Ziebell objected to the Firm's representation of alfaCTP on a "concurrent representation" theory prior to the filing of the Disqualification Motion in November 2015.

does not credit Nierman's theory that he did not recognize the relationship as adversarial, especially as Nierman—in support of his Rule 3.7 disqualification argument—specifically faults the Firm for not "removing themselves from this matter in May of 2013, when a conflict was evident and the spectre of Speranza's testimony loomed" and while "the Firm continued to marshal evidence on [alfaCTP's] behalf." (R.26, Reply Br. at 8-9).

Given these overtly adverse acts and statements from 2013-2015, as well as the lapse of time between 2010 and 2015 during which Nierman did not use Speranza's legal services in his personal capacity, the Court concludes that Nierman was not a current client of Speranza as of October 2015.[8] Accordingly, the Court finds no violation of Model Rule 1.7 and declines to disqualify the Firm pursuant to Model Rule 1.10.[9]

---

[8] For purposes of this analysis, the Court does not consider Nierman's belated allegations that Speranza personally advised him on his post-termination interactions with alfaCTP and on other matters in 2013-2014. "It is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond." *Citizens Against Ruining The Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008). Even if properly raised, moreover, these allegations are insufficient to warrant disqualification, for the reasons explained below. *See SWS Fin. Fund A*, 790 F. Supp. at 1399-1403 (holding that disqualification does not automatically follow from a Rule 1.7 conflict-of-interest violation).

[9] The Court notes that disqualification is likely unwarranted under both Model Rule 1.7 (concerning current clients) and Model Rule 1.9 (concerning former clients). The Seventh Circuit has adopted a "substantial relationship" test to determine whether an attorney who undertakes litigation against a former client should be disqualified. *See LaSalle Nat. Bank v. Lake Cty.*, 703 F.2d 252, 255 (7th Cir. 1983). The central inquiry turns on: (1) the scope of the prior representation; (2) whether it is reasonable to infer that confidential information was shared; and (3) whether that information is relevant to the pending litigation. *Id.* at 255-56. Here, although a reasonable inference may be that Nierman shared confidences with Speranza and/or the Firm relating to his estate planning and real estate investments, such information is not reasonably related to the present litigation. Nierman, in any event, does not allege a violation of Model Rule 1.9.

## II.     Advocate-Witness Rule (Rule 3.7)

Model Rule 3.7 prohibits an attorney who is a "necessary witness" on a contested issue from acting as trial advocate, unless disqualification "would work substantial hardship on the client." The rule has several objectives, including: (1) eliminating "the possibility that the attorney will not be a fully objective witness;" (2) reducing "the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments;" and (3) reflecting "a broad concern that the administration of justice not only be fair, but also appear fair." *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983).

Nierman argues that Speranza's testimony is necessary to explore the issues of corporate minutes, Nierman's business communications, Mr. Ponzi, and Nierman's retention of corporate assets. Speranza, in turn, denies that he has any knowledge or information bearing on "the misconduct attributed to Nierman, his compensation, or any other term or condition of his employment." (R.25-1, Speranza Aff. ¶¶ 14, 18).

Even assuming that Speranza has relevant knowledge, however, Nierman has failed to even allege that Speranza's testimony is "necessary" within the meaning of Rule 3.7. Documentary evidence (such as the corporate minutes and other written communications) and deposition testimony from other sources (such as Nierman and/or Mr. Ponzi) preclude a finding, at this stage of the proceedings, that Speranza is a "necessary witness" under Rule 3.7. *See United States v. Turner*, 651 F.3d 743, 750 (7th Cir. 2011) (noting, in the context of a Rule 3.7 disqualification, that "[w]e do not take the disqualification of defense counsel lightly, especially when the same evidence might have been available through alternate sources or had limited probative value"); *see also, e.g.*, *Walton v. Diamond,* No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) ("A 'necessary' witness under Rule 3.7 is one whose testimony is

10

unobtainable elsewhere . . . If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness") (citation and quotation omitted).

Furthermore, Rule 3.7 serves to reduce the risk of jury confusion and to avoid the appearance of impropriety. These concerns do not come into play unless and until the attorney-witness is also trial counsel. *See* Model Rule 3.7(a). Thus, the rule does not prohibit Speranza from representing alfaCTP in pre-trial proceedings, or prohibit another member of the Firm from acting as trial counsel, even if the Court eventually disqualifies Speranza under Rule 3.7. *See, e.g.*, *Mercury Vapor Processing Techs., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 788-90 (N.D. Ill. 2008); *see also* Model Rule 3.7(b).

The Court agrees with Speranza and alfaCTP that a disqualification determination under Model Rule 3.7 is premature and unwarranted. *See Dawaji v. Kohlhoss*, No. 13 CV 6404, 2013 WL 6197161, at *3 (N.D. Ill. Nov. 27, 2013) ("At this point in the litigation, this court finds that it is too early to anticipate the testimony or proof likely to be offered by any of the parties. Even if [the attorney's] testimony can be deemed to be necessary at trial, ABA Model Rule 3.7 does not empower this court to disqualify him at this time"). Accordingly, Court declines to disqualify Speranza or the Firm pursuant to Model Rule 3.7.

### III.   Appropriateness of Disqualification as a Remedy

The Court additionally notes that, even *if* Speranza violated an ethical standard, Nierman has failed to meet the "heavy burden of proving facts required for disqualification." *Commonwealth Ins. Co.*, 178 F. Supp. 2d at 943. In particular, there is no allegation or indication that Speranza or any other Firm member received any confidential information from Nierman related to this action. Disqualification is a "prophylactic device for protecting the
11

attorney-client relationship[.]" *Freeman*, 689 F.2d at 721.  Here, Nierman fails to allege—either in his opening or reply briefing—that he shared any relevant confidences with Speranza and/or the Firm during the period in which he engaged the Firm as his personal attorneys.  Nierman also fails to demonstrate that he will suffer harm from the Firm's continued representation of alfaCTP in this matter.  *See Gina Jang*, 2013 WL 3270649 at *5 (denying disqualification where movant failed to show harm or breach of confidences).  Disqualification is a "drastic measure" imposed only when "absolutely necessary."  *Schiessle*, 717 F.2d at 420.  This case does not qualify for such a drastic remedy.  The Court therefore denies the Disqualification Motion.

## CONCLUSION

The Court denies Defendant's motion for disqualification.  (R.20).  In light of the foregoing, the Court denies as moot Plaintiff's Motion to Strike.  (R.28).


**Dated:**  February 19, 2016  

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge